FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Enterprise Engineering Incorporated
5911 Kingstown Village Parkway
Suite 240
Alexandria Virginia 22315

Eagle Optimization Solutions, Inc.         Civil Action No. _1:10CV 1426
5911 Kingstown Village Parkway                            GBL/ JFA
Suite 240
Alexandria Virginia 22315

Janice L.M. Buxbaum
1704 Courtland Road
Alexandria Virginia  22306
            Plaintiffs,

        v.

Gerda Edwards
4103 Westman Court
Alexandria Virginia 22306
            Defendant

## COMPLAINT

### The Parties

1.    Plaintiff Enterprise Engineering Incorporation ("EEI") is a Virginia corporation with a

      principal place of business at 5911 Kingstowne Village Parkway, Suite 210, Alexandria

      Virginia 22315.

2.    Plaintiff Eagle Optimization Solutions, Inc. ("EOS") a Virginia corporation with a

      principal place of business at 5911 Kingstowne Village Parkway, Suite 210, Alexandria

      Virginia 22315.

2917527 v02

3.    Plaintiff Janice LM Buxbaum is an adult resident of Virginia.  She is the president and
CEO of EEI, and owner and controlling shareholder of EOS.

4.    Defendant Gerda Edwards is a former employee of EEI and remains a director of both
EEI and EOS.

## Jurisdiction

5.    This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331
as an action that arises under the copyright laws of the United States and under the
Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has subject matter
jurisdiction over Plaintiff's claims for copyright infringement pursuant to 17 U.S.C. §
1203, 28 U.S.C. § 1338 and 18 U.S.C. § 1030(g).

6.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of
Virginia pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs'
claims under federal law that they form part of the same case or controversy and derive
from a common nucleus of operative fact.

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiffs and
Defendant reside in this District and a substantial part of the events giving rise to the
claims occurred in this District.

8.    Personal jurisdiction over Defendant Gerda Edwards is proper because (a) her residence
and principal location of business is located in this District and, (b) she has committed
tortious and other actionable acts alleged herein with foreseeable consequences in this
District, and has caused actual tortious injury in this District.

2917527 v02

ALLEGATIONS THAT APPLY TO ALL COUNTS

9.    In 1999, Ms. Buxbaum, using her considerable prior experience in the area, founded EEI,
      a software developer specializing in programs for program management and modeling for
      the federal government.

10.   EEI grew to 48 employees and, between 1999 and 2004, made substantial profits.  By
      2004, EEI had approximately $3 million in retained earnings Ms. Buxbaum wished to
      invest.

11.   In May 2004, Ms. Buxbaum began a relationship with the defendant Gerda Edwards. The
      defendant was then an active duty Navy Captain trained in information technology.

12.   In August 2004, Ms. Buxbaum hired Defendant Edwards as an employee of EEI to invest
      EEI's retained earnings.

13.   Towards the goal of having Ms. Edwards trade EEI funds, in 2005 Ms. Buxbaum
      founded JLMB Management Corporation.  EEI loaned funds to JLMB so that the funds
      could then be traded for the benefit of JLMB and EEI in turn.  Ms. Buxbaum made Ms.
      Edwards a director of JLMB.

14.   In 2005, Ms Buxbaum opened an account with OptionsXpress in the name of JLMB, and
      deposited $600,000 of EEI profits into that account, as a loan from EEI to JLMB.

15.   In October 2006, Ms. Buxbaum opened a corporate account with InterbankFX in the
      name of JLMB, making an initial deposit of $100,000 and a subsequent deposit in 2007
      of $50,000. Ms. Edwards managed and oversaw all trading activity on this account.  This
      account incurred heavy trading losses that were never reported to the company by Ms.

2917527 v02

Edwards. In 2006, Ms. Edwards changed the email address on the account from jbuxbaum@cox.net to Ms. Edwards' personal corporate account OSPstrategies@aol.com.

16.    As a result, none of the notifications regarding the account or activity in the account were sent to Ms. Buxbaum.

17.    A second account with InterbankFX in the name of Gerda Edwards only was also opened by Ms. Edwards on or about January 10, 2007, unbeknownst to Ms. Buxbaum.

18.    Another corporate account for JLMB was to be established with MB Trading on or about June 30, 2006, that was to be funded with $100,000 which amount was authorized and provided to Ms. Edwards, but the account was never funded. As a result, a total of $850,000 of corporate funds were entrusted to Ms. Edwards to trade on behalf of the company.

19.    To date, EOS and its predecessor JLMB can account for the return from these trading accounts of only $731,000 of the amounts entrusted to Ms. Edwards as an employee and corporate fiduciary of EOS, leaving a balance of $119,000 missing.

20.    On information and belief, Ms. Edwards has misappropriated these funds and converted them to her own personal use.

21.    Recent events support this conclusion. On March 18, 2010, Ms. Edwards updated the email address for the corporate OptionsXpress account to her personal trading company email ospstrategies@aol.com. After Ms. Edwards' termination, a review of corporate records in her office uncovered a letter on her computer created on March 18, 2010, advising OptionsXpress that JLMB had been dissolved (a false statement) and directing

transfer of corporate funds to a joint personal account. (Attached as Exhibit A is a copy of the letter.)

22.    Also on March 18, 2010, Ms. Edwards contacted Interbank FX and asked to transfer funds from the corporate JLMB Management account to her personal account. When she was told it was not possible to transfer funds from a corporate account to a personal account, Ms. Edwards advised the customer service representative that JLMB had been dissolved when in fact it had not been. (Attached as Exhibit B is a transcript of Ms. Edwards conversation with an InterbankFX customer service representative.)

23.    On or about April 14, 2010, Ms. Edwards changed the name on the OptionsXpress account from JLMB to EOS and then disabled Ms. Buxbaum from the OptionsXpress EOS account.

24.    After being notified of her impending termination, on June 6, 2010, Ms. Edwards reset the password on the OptionsXpress account.

25.    After being terminated from her employment, on June 8, 2010, Ms. Edwards removed Ms. Buxbaum's name from the EOS account entirely, changed the phone contact information from the EOS corporate office to Ms. Edwards' cell phone and changed the address on the account to Ms. Edwards' home address.

26.    On June 16, 2010, Ms. Edwards requested a check for $24,000.00 from the OptionsXpress EOS account, which was sent to her by mail. Ms. Edwards cashed the check with only her endorsement. Without authorization, at some time after Ms. Edwards obtained the proceeds of the check, she paid her personal attorney $3,500 with corporate funds belonging to EOS and returned only $20,500.

27.   In addition, Ms. Buxbaum invested additional personal monies for Ms. Edwards to trade. These were held in joint accounts of Ms. Buxbaum and Ms. Edwards.

28.   In total Ms. Buxbaum invested in excess of $350,000 of her personal funds with Ms. Edwards to trade on behalf of Ms. Buxbaum.

29.   To date, only $147,000 of those personal funds entrusted to Ms. Edwards have been accounted for, leaving a balance of $138,000 missing.

30.   From 2004 to 2008, Ms. Buxbaum invested approximately $94,000 in Ms. Edwards' courses in trading, seminars, hardware and software applications / tools, and other associated expenses such as travel, and per diem to further Ms. Edwards' trading / wealth building prowess.

31.   Further, during this time, Ms. Buxbaum through EEI paid Ms. Edwards a salary averaging over $165,000 a year.

32.   In 2007, Ms. Buxbaum began to develop M-Boss, a performance budget optimization software for commercial use. Such software typically takes several years to develop. Moreover, as the primary end users of M-Boss were likely to be agencies of the federal government, numerous approval obstacles suggested it would be several years before such software would be profitable.

33.   In March 2008, Ms. Buxbaum put Ms. Edwards in charge of the team developing M-Boss.

34.   In May 2008, Ms. Edwards requested that EEI have all employees of EEI execute a non-disclosure trade agreement, entitled "NonDisclosure/Trade Secret Protection/Work Made for Hire Acknowledgment Agreement".

2917527 v02

35.    On June 4, 2008, Ms. Edwards, as an employee of EEI, executed such a document which
was witnessed and accepted on behalf of EEI by Ms. Buxbaum. A copy of the agreement
in the exact form as it was signed by Ms. Edwards is attached as Exhibit C. The original
was mysteriously removed from Ms. Edwards' employment file. Exhibit C was signed
by another employee, but was accepted and witnessed on behalf of the Company by Ms.
Edwards and bears Ms. Edwards' signature. The only individuals with access to the
employment files were Ms. Buxbaum and Ms. Edwards.

36.    On August 23, 2004, Ms. Edwards signed an acknowledgement that she received a copy
and understood the Employee Handbook. A copy of the acknowledgement signed by Ms.
Edwards is attached as Exhibit D. Section 1010 of the Manual, the introductory section
of the handbook, expressly incorporates and directs the employee to the Company's
Policies and Procedures for detailed guidance on the topics covered. Section 4090 of the
Manual, which describes termination procedures, covers return of company property and
Sections 5030 and 5040 concerning Security of computer systems and confidentiality
highlight Ms. Edward's obligations in this area. Copies of these sections of the
Handbook are attached as Exhibit E. Additionally, Sections 5110, 6035 and 6070 include
employee obligations regarding termination of employment and return of company
property, computer security and use as it relates to confidentiality and use/ownership of
computer software and hardware, and the required treatment of company confidential
information and trade secrets. Copies of these sections of the Policies and Procedures of
the company are attached as Exhibit F. On information and belief all of these obligations
were well known to, and understood by, Ms. Edwards.

- 7 -

2917527 v02

37.  In the fall of 2008, Ms Buxbaum decided to change the name of the M-Boss software to PBO 180.

38.  On October 1, 2008, Ms. Buxbaum decided to move PBO 180 outside of EEI because EEI's structure was optimized for delivery of services, as opposed to product development.

39.  As part of this movement, Ms Buxbaum changed the name of JLMB to Eagle Optimization Solutions, Inc. (EOS), a name more descriptive of a company that would be engaged in product development and whose primary asset was going to be the PBO 180 application software.

40.  On October 9, 2008, Ms. Buxbaum obtained a copyright registration from the Library of Congress for the PBO180 software and documentation. The copyright is owned by EOS with Ms. Buxbaum as the author. See Exhibit G.

41.  As of 2008, Ms. Buxbaum had invested $850,000 of corporate and over $350,000 in personal funds into various corporate and "joint" trading accounts with Ms. Edwards. To enable Ms. Edwards to trade these funds / accounts, and for Ms. Buxbaum and EEI/EOS to receive an anticipated return on the investment it made for Ms. Edwards' trading education, Ms. Buxbaum had invested approximately $94,000 in Ms. Edwards. At this time, Ms. Buxbaum had additionally invested over, $1.5 million in payroll and benefits and other expenses totaling over $3 million to develop the PBO 180 software application.

42.  From August 2009 to May 2010, the poor economy and the federal government budgetary restraints meant that PBO 180 was not the subject of any federal contract.

2917527 v02

43.   During this time, Ms. Buxbaum used her personal funds to meet the EEI payroll and

monthly bills of approximately $160,000, having to cover an average $100,000 monthly

shortfall.

44.   While Ms. Buxbaum was investing her personal money to keep EEI and EOS solvent,

Ms. Edwards was being paid her yearly $186,000 salary.  Further, she retained control of

the trading accounts.

45.   In April 2010, a copy of the PBO 180 Software source code Version 1.1 was provided to

Ms. Edwards in her capacity as an officer and fiduciary of EOS to store offsite as a

disaster recovery backup.  See Statement of Wakil Darmani, attached as Exhibit H.  This

copy of the source code, which is company property valued at $3-5 Million, and a trade

secret, has never been returned by Ms. Edwards.

46.   In early May 2010, Ms. Buxbaum requested that Ms. Edwards cash out what she

understood was then the remaining balance in the corporate trading accounts of

approximately $200,000. Ms. Edwards refused to take this action.

47.   On June 5, 2010, Ms. Buxbaum told Ms. Edwards said that due to the continuing

financial distress of EEI, Ms. Buxbaum reiterated her request that the remaining

corporate and trading accounts be liquidated and the funds be provided to Ms. Buxbaum.

48.   Ms. Edwards responded that in her view such requests were not rational, that Ms.

Buxbaum's requests were based on personal issues, and therefore she would not comply

with the requests.

49.   During an exchange of messages on Sunday, June 6, 2010, Ms. Buxbaum advised Ms.

Edwards that under the current circumstances it was necessary to terminate Ms. Edwards'

employment. On Monday, June 7, 2010, in response to a further exchange of messages, Ms. Edwards reiterated she would not comply with the requests. In response, Ms. Buxbaum confirmed her decision to terminate Ms. Edwards in a message that was acknowledged as "read" by Ms. Edwards.

50.    Immediately, following the above written termination acknowledgement, Ms. Edwards used the corporate email to send two emails (attached as Exhibit I) to her personal account [gwedutch@aol.com] attaching copies of the following highly confidential and proprietary company documents which are also protected by copyright:

- PBO180_Design 2010.doc
- Implementation Plan 2010.doc
- PBO180_Functional_Spec 2010.doc
- Eagle Optimization_Design 2010.doc

51.    Ms. Buxbaum realized that at around the time of Ms. Edwards' departure, Ms. Edwards took with her several EEI computers, Ms. Buxbaum's company cell phone, and other EEI property. Ms. Buxbaum called Ms. Edwards and told her to return the property. Ms. Edwards refused and further denied having these items. After repeated requests to Ms. Edwards, Ms. Buxbaum notified the Fairfax County Police and reported the thefts.

52.    On July 1, 2010, Ms. Edwards sent the following company property to EEI/EOS offices:

- 6 discs Commodities Software
- 7 discs Options Software
- 6 discs 4x software
- 6 discs Wisecoach Software
- 4 monitors
- 1 computer (Dell)
- 1 IMAC computer
- 1 laser printer

- 10 -

- 1 office key (Ms. Edwards' office)
- 2 EOS Navy Federal Credit Cards

Included in the property that was returned was the IMAC computer Ms. Edwards told the

police she did not have.

53.    The Dell computer that was returned had been used as the company trading platform for

JLMB Management through approximately 2007 and then used as a backup trading

platform. As shown in the Forensic analysis attached as Exhibit J, the Dell computer was

wiped on or about May 2010, using iolo Technologies' Drive Srubber 3, a special type of

software designed to make forensic recovery of data impossible. As a result, company

property in the form of software and proprietary company financial information was

destroyed and has not been returned pursuant to Ms. Edwards' obligations and in

violation of the agreements with the company.

54.    The Company has identified the following property that was know by Ms. Buxbaum and

others at EEI to be in Ms. Edwards' possession, custody or control that has not been

returned:

1.  PBO 180 source code April 2010 version 1.1 and database $3-5 Million
2.  Xview Computer Trading Platform - $9,572.00
3.  4 Dell Monitors flat screen monitors - $1200.00 each - (that went with the Dell Computer Defendant returned - the one with an erased hard drive) - $4800.00
4.  CommandTrade Software - purchased at a conference on the company credit card: $4654.18
5.  WiseTrade Defendant returned several disks - specifically the 4X disks; wizecoach disks; Options and Commodities, but did not return the required keys for the software. Despite Defendant's statements to the contrary, WizeTrade will not reissue the keys. Total price for this bundle is $11,424.33
6.  The iMac Computer Defendant returned has been stripped of approximately $5,531.00 of software as follows:

    a.  Adobe Acrobat Pro CS3 $449.00

- 11 -

b. Adobe Bridge CS3 $300.00
c. Adobe Contribute CS3 $199.00
d. Adobe Device Control CS3 $91.00
e. Adobe Dream Weaver CS3 $399.00
f. Adobe Illustrator CS3 $599.00
g. Adobe Photoshop CS3 $999.00
h. Adobe Stock Photos CS3 $99.00
i. Adobe Fireworks CS3 $299.00
j. Adobe Flash CS3 $399.00
k. Adobe Flash Video Encoder CS3 $999.00
l. Adobe inDesign $699.00

Total $5,531.00  (See Statement of EEI employee, attached as Exhibit K and receipt showing charge to EEI corporate credit card as Exhibit L.)

7. Company iPhone $495.00 (See corporate reimbursement form, attached as Exhibit M)
8. HP ipaq 6845 mobile messenger $776.89
9. 250gb usb backup for pc $430.00
10. MacBook Air Superdrive $99.00
11. iWork 08 Family Pack software Part Number : MA791Z/A (disks, keys, and documents) $99.00
12. MagSafe Airline adapter $49.00
13. Incase Nylon Sleeve $59.95
14. Apple World Travel Adapter Kit Part Number: M8794G/B $39.00
15. Apple Dock Connector to USB Cable Part Number: MA591G/A $19.00
16. Monster Headphone Adaptor for iPhone Part Number: TP485LL/A $9.95
17. Kensington - Slimblade Trackball Mouse Part Number: TQ114LL/A $99.95
18. DiskGo 160GB portable hard drive $79.00
19. EOS logo source file ($4,500 for the design)

55.   The XView computer identified above was purchased by the company for Ms. Edwards'

use as an employee and corporate fiduciary and is a specialized computer designed

specifically for active trading. The XView computer was used by Ms. Edwards to trade

both the corporate accounts and the joint accounts in Ms. Edwards' and Ms. Buxbaum's

names.  As a result, the computer contains highly confidential financial information and

software owned by the company, which through Ms. Edwards' course conduct by failing

to return the computer hardware, software, and valuable and confidential company

- 12 -

2917527 v02

information, has resulted in a loss well in excess of the $5,000 required under 18 U.S. C. § 1030. The XView computer was delivered to and maintained at Ms. Edwards home. See Exhibit N. Additionally, the XView is not now and has never been located at EEI's offices. See Statements of EEI employees attached as Exhibit O.

56. After her termination, Defendant communicated with EEI employees stating that she was developing PBO180 at home. For example on June 8, 2010, Defendant sent the following in a text message: "I am working on rebuilding eos + pbo as a home and asset/ ownership for all of you...bear with me while I get thru this. please pass to the rest."

57. Although Defendant emailed several proprietary PBO 180 documents to her personal email address on the day she was terminated, Defendant also later approached one of EEI's employees on June 17, 2010, requesting that the employee breach her confidentiality obligations to the company, and make a copy of the PBO180 User's Manual and deliver it to Defendant privately: "mel. can you download the users manual for me onto a cd and perhaps allow me to pick it up from you privately?" The employee declined the request. Defendant also successfully induced one of EEI's employees to breach the employee's confidentiality obligations by requesting and receiving the administrator's password for the IMAC computer in Defendant's possession that was used to permit removal of company property in the form of software from the IMAC computer. See Statement of EEI employee attached as Exhibit P.

58. On July 23, 2010, with numerous issues remaining unresolved between the parties, Plaintiffs filed a suit styled *Enterprise Engineering Inc., et al v. Gerda Edwards, U.S.D.C., Eastern District of Virginia, 1:10-cv-820 (GBL/JFA)*, alleging a number of

2917527 v02

causes of action arising from Ms Edwards' wrongful and unlawful conduct outlined above. Before the Defendant answered the Complaint, the parties entered into a Settlement Agreement on August 25, 2010. On December 9, 2010, the parties stipulated to a dismissal of that case with prejudice specifically reserving rights under the Settlement Agreement. The dismissal was entered on December 10, 2010.

59.     The Settlement Agreement is confidential, but the terms can be described generally. Section I of the Settlement Agreement included an affirmative obligation on the part of the Defendant to return all checks and funds in her possession custody or control relating to the corporate and personal accounts that were funded as described above for Ms. Edwards to trade on behalf of the corporate entities EOS to the benefit of EEI, and on behalf of Ms. Buxbaum personally. Section I also included a representation and warranty that the checks/funds she did return were all of the Plaintiffs' check /funds in her possession custody and control. As outlined above, Defendant has not returned all of the funds in her possession custody or control and, on information and belief, Defendant has converted the funds to her own use in violation of the Settlement Agreement.

60.     Specifically, pursuant to a subpoena issued to TradeStation Securities and in turn to J.P. Morgan Chase to obtain an image of the reverse side of the check as endorsed, Plaintiffs obtained an image of a check for $49,413.79, drawn on a joint personal account of Buxbaum and Edwards that reveals a forgery of Ms. Buxbaum's signature in the endorsement. Additionally, the funds were deposited into a personal account of Ms. Edwards only. See copy of check attached as Exhibit Q. On information and belief these funds have never been returned in violation of Section I of the Settlement Agreement and

- 14 -

the representation and warranty contained therein.

61.    In Section III of the Settlement Agreement, Defendant reaffirmed her obligations to the company concerning, *inter alia* protection of trade secrets and return of company property and, in an additional provision, specifically agreed to return EOS stock certificates as well as all PBO180 Software and software documentation. Similar to Section I, which included a representation and warranty, this section required Defendant to certify that all company property in her possession custody or control was returned. As demonstrated by the list of property set forth above that has not been returned, Defendant signed a false certification in violation of the Settlement Agreement.

62.    The Settlement Agreement included an additional provision in Section II pursuant to which, Defendant was obligated, within five days after execution of the Settlement Agreement, to identify all personal and corporate trading accounts so that a proper accounting could be prepared for 2009 and 2010. Defendant breached this provision by failing to identify the InterbankFX account described above, which incurred trading losses, and which was not closed until March 2010. On information and belief, this is not the only account that was not identified.

63.    Pursuant to Section III of the Settlement Agreement, to the extent such an interest ever existed, Defendant waived and denied the existence of any and all claims to an ownership interest in the PBO180 software application or to EOS itself.

64.    The PBO software returned on August 31, 2010, pursuant to the Settlement Agreement was a 2009 version that was also in Ms. Edwards' possession as a fiduciary for disaster recovery. Ms. Edwards has not returned the April 2010 version of the PBO source code,

- 15 -

which on information and belief she has copied in furtherance of her stated intention to carry on the business of EOS after she was terminated.

65. As a fiduciary of the company, a signatory to the non-disclosure agreement as well as the acknowledgement of the company handbook, Ms. Edwards had a duty to EOS and EEI not to disclose or take for her own use assets of either company, including the PBO 180 Software and the proprietary PBO180 documentation that she email to herself on June 7, 2010 after she had been terminated.

66. Following her termination, Ms. Edwards sought to use PBO 180 for her own benefit by representing to third parties and EEI employees that she owned it. On June 30, 2010, weeks after she was terminated, Ms. Edwards stated in an email to Ms. Buxbaum that she would continue to market PBO180 and in furtherance of that stated intention, on information and belief, has made one or more copies of the software and documentation to carry out her stated plan.

67. On or about June 7, 2010 and again on or about September 22, 2010, after she signed he Settlement Agreement, Ms. Edwards, without authority of the copyright holder changed the administrator's passwords that control administrative level access to the web servers and URLs (pbo180.com, pbo180msc.com, and EOsolutionsinc.com) for the PBO180 Software. This bypasses a protective measure that prevents access to the PBO180 Software and documentation that is the subject to copyright protection.

68. In addition, on or about September 22, 2010, without authority and after signing the Settlement Agreement, through the corporate account with Network Solutions, Inc. owned by EOS, Ms. Edwards wrongfully changed the registrant for the three URLs

identified above from EOS to her personal company, OSP Trading Strategies. Ms.

Edwards then made a second change from OPS Trading Strategies to "gerdaedwards."

EOS was subsequently able to restore EOS as the correct registrant of record.

### Count One
### Circumvention of Copyright Protection Measures
### 17 USC Sec 1201 et seq

69.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in

paragraphs 1 through 68 of the Complaint.

70.    At all times pertinent hereto, EOS has held a properly registered copyright on PBO 180

Software and documentation.

71.    Ms. Edwards has no ownership or equity interest in either EOS or the PBO 180 Software

and its documentation.

72.    On two occasions, one of which occurred after the signing of the Settlement Agreement,

without authority from the copyright owner, Ms. Edwards bypassed a protective

technological measure in the form of passwords to gain access to materials that are

protected by copyright.

73.    Such violations entitle EOS to an award of injunctive relief and statutory damages

pursuant to 17. U.S.C. § 1203.

WHEREFORE, Plaintiffs request that this Court enter an injunction barring Ms. Edwards

from further violations of 17. U.S.C. § 1203, and for their statutory damages, attorneys fees, and

any other relief this court deems just and proper.

2917527 v02

Count Two
Copyright Infringement
17 U.S.C. § 501

74.    Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 68

of the Amended Complaint.

75.    At all times pertinent hereto, EOS held a properly registered copyright in the PBO 180

Software and documentation.

76.    On June 7, 2010, by emailing the documentation to herself, Ms. Edwards reproduced

copyrighted material without authority of the copyright owner in violation of the

exclusive rights set forth in 17 U.S.C. § 106.  These unlawful copies were not returned in

violation of the Settlement Agreement.

77.    On information and belief, pursuant to her stated intention to continue the PBO180

business from her home and again on June 30, 2010 to continue the EOS business,

including marketing the PBO180 Software, and retaining to this day, the April 2010

version of the PBO180 source code, Ms. Edwards has made or distributed additional

illegal copies of the software and documentation without authority of the copyright

owner in breach of the terms of the Settlement Agreement and in violation of the

exclusive rights of the copyright holder.

WHEREFORE, Plaintiffs requests that this Court award damages, enhanced damages for

willful copying, attorneys' fees and any other relief that the Court deems just and proper.

Count Three
The Virginia Uniform Trade Secrets Act
Va Code Sec. 59.1-336 et seq.

78.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in

2917527 v02

paragraphs 1 through 68 of the Complaint.

79.   Ms. Edwards' retention of the PBO 180 software and proprietary documentation that she
      emailed to herself after her termination from EEI and her retention of company financial
      information on the Xview trading platform all of which constitutes company property
      that Defendant has failed to return in violation of the Settlement Agreement, constitutes
      misappropriation of trade secrets.

80.   Such misappropriation was and is willful and malicious.

      WHEREFORE, Plaintiffs request that this Court order the return of the PBO 180
software, software documentation, and Xview trading platform, and award compensatory,
statutory and or punitive damages for such misappropriation, the attorneys fees and costs
incurred in enforcing an injunction barring Ms. Edwards from any further misappropriation, and
any other relief this Court deems just and proper.

Count Four
Conversion

81.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in
      paragraphs 1 through 68 of the Complaint.

82.   On her termination as an employee of EEI, Ms. Edwards took various EEI property from
      the company, including, but not limited to, the PBO 180 software valued at $3-5 Million,
      and other property outlined above and converted it to her personal use in violation of her
      obligations to the company and in breach of the Settlement Agreement.

83.   During Ms. Edwards' employment and after, she converted over $257,000 of corporate
      funds and personal funds of Plaintiffs to her personal use in violation of her obligations
      to the company and in breach of the Settlement Agreement.

- 19 -

WHEREFORE, Plaintiffs request that this court order the return of all Plaintiffs' funds and property, an accounting for all such property and funds and an award of compensatory damages against Ms. Edwards, and any other relief this court deems just and proper.

Count Five
Breach of Contract – Settlement Agreement
Return of Company Property

84.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in
        paragraphs 1 through 68 of the Complaint.

85.     By misappropriating PBO 180, and the associated documentation, valued at $3-5 Million,
        as well as the remaining company property outlined above, Ms. Edwards breached
        Section III of the Settlement Agreement.

WHEREFORE, Plaintiffs ask that this court enter an injunction directing Ms. Edwards to comply with the terms of the Settlement Agreement and the non-disclosure agreement incorporated therein, for the return of company property, for compensatory damages, and any other relief this court deems just and proper.

Count Six
Breach of Contract – Settlement Agreement
Return of Funds

86.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in
        paragraphs 1 through 67 of the Complaint.

87.     By retaining and converting to her own use, the corporate and personal funds outlined
        above, Defendant has breached Section I of the Settlement Agreement.

WHEREFORE, Plaintiffs ask that this court enter an injunction directing Ms. Edwards to comply with the terms of the Settlement Agreement regarding the return of company property,

- 20 -

that this court order an accounting by Defendant of all accounts traded on behalf of the Plaintiffs

including joint personal accounts for Buxbaum and Edwards and Edwards individual accounts,

and that this court award compensatory damages, and any other relief this court deems just and

proper.

Count Seven
Breach of Contract – Settlement Agreement
Accounting

88.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in

       paragraphs 1 through 67 of the Complaint.

89.    By refusing to provide a proper accounting of all activity in all corporate and joint

       personal trading accounts, Defendant has breached Section II of the Settlement

       Agreement.

       WHEREFORE, Plaintiffs ask that this court enter an injunction directing Ms. Edwards to

comply with the terms of the Settlement Agreement regarding the return of company property,

that this court order an accounting by Defendant of all accounts traded on behalf of the Plaintiffs

including joint personal accounts for Buxbaum and Edwards and Edwards individual accounts,

and that this court award compensatory damages, and any other relief this court deems just and

proper.

Count Eight
Computer Fraud and Abuse Act
18 U.S.C. § 1803

90.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in

       paragraphs 1 through 94 of the Complaint.

91.    By retaining custody of the XView computer (in breach or the Settlement Agreement)

- 21 -

and by wiping the hard drive of the Dell Computer (which included company information

that has not been returned in breach of the Settlement Agreement), Ms. Edwards has

caused a loss to one or more persons via a course of conduct affecting one or more

computers in violation of 18 U.S.C. §1803.

WHEREFORE, Plaintiffs seek the return of company property, compensatory damages,

injunctive and other equitable relief as the Court deems just and proper.

JURY TRIAL DEMAND ON ALL ISSUES SO TRIABLE.

This _20th_ day of _December_, 20_10_.

Respectfully submitted,

Robert A. Gutkin
Virginia Bar No. 47948
Aldo Noto
Virginia Bar No. 31567
Andrews Kurth, LLP
1350 I Street, NW, Suite 1100
Washington, DC  20005
Telephone:  (202) 662-2785
Fax (202) 974-9536
robertgutkin@andrewskurth.com

Attorneys for Plaintiffs

- 22 -

2917527 v02